UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NANDRAM BAHADUR,

               Plaintiff,

               -against-

LEE DUDEK,
*Acting Commissioner of Social Security*,[1]

               Defendant.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-1483 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On March 17, 2025, Plaintiff Nandram Bahadur ("Plaintiff") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Defendant") final decision denying his application for disability insurance benefits ("DIB"). *See generally* Civil Complaint, Dkt. 1 (the "Complaint" or "Compl."). Before the Court are the parties' cross-motions for judgment on the pleadings. *See generally* Plaintiff's Motion for Judgment on the Pleadings, Dkt. 8 (the "Plaintiff's Motion" or "Pl.'s Mot."); Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings, Dkt. 10-1 (the "Defendant's Motion" or "Def.'s Mot."); Plaintiff's Reply Brief, Dkt. 12 (the "Plaintiff's Reply" or "Pl.'s Reply"). Having considered the parties' pleadings, briefs, and the administrative record, the Court denies Plaintiff's Motion and grants Defendant's Motion.

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court notes that Frank Bisignano is now the Commissioner of Social Security and automatically substituted as a party in this case. The Court directs the Clerk of Court to substitute Mr. Bisignano as Defendant on the docket.

**BACKGROUND**

### A. Plaintiff's DIB Application

Plaintiff applied for DIB on December 19, 2022, alleging that he had been disabled since April 27, 2022, due to a left shoulder and lower back injury he sustained after a slip-and-fall accident at his job as a laborer for Brewster Builder. *See* Administrative Transcript at 17, 22, Dkt. 6 (the "Administrative Record" or "R."); Joint Stipulation of Facts at 2, Dkt. 11 (the "Joint Stipulation" or "Joint Stip."). Defendant initially denied Plaintiff's application on February 28, 2023, R. at 17, 52-58, and again on reconsideration on June 16, 2023, *id.* at 17, 59-65. Plaintiff subsequently filed a request for a hearing on July 5, 2023, *id.* at 17, 84-86, and appeared at a telephonic hearing before Administrative Law Judge Robert R. Schriver (the "ALJ") on December 4, 2023, *id.* at 17, 33-51.

### B. The ALJ's Findings

On April 17, 2024, the ALJ denied Plaintiff's application for DIB under Social Security Act §§ 216(i) and 223 (codified at 42 U.S.C. §§ 416(i) and 423, respectively). *Id.* at 14-28. Applying the Social Security Administration's five-step sequential evaluation process, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 27, 2022, Plaintiff's alleged disability onset date. *Id.* at 19-20. At step two, the ALJ determined that Plaintiff had the following severe impairments: internal derangement of the left shoulder and lumbar radiculopathy. *Id.* at 20. At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then assessed that Plaintiff retained the "residual function capacity" (the "RFC") to perform "light work as defined in 20 CFR § 404.1567(b), except that he can only occasionally climb, balance, stoop, kneel, crouch, crawl, or reach overhead with his left arm." *Id.* at 21; *see id.* at 21-26. At step four,

the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id.*at 26-27.  At step five, the ALJ found that Plaintiff was, however, able to perform work existing in significant numbers in the national economy. *Id.* at 27-28.  Accordingly, the ALJ concluded that Plaintiff was not disabled and, therefore, not eligible for DIB from April 27, 2022, the alleged date of onset, through April 17, 2024, the date of the ALJ's decision. *Id.* at 28.

The Social Security Appeals Council denied Plaintiff's request for review on January 16, 2025, rendering the ALJ's decision the final decision of Defendant. *Id.* at 1.

### C.  District Court Procedural History

On March 17, 2025, Plaintiff commenced this 42 U.S.C. § 405(g) action, seeking review of Defendant's final decision. *See generally* Compl.  Simultaneously, he filed a motion for leave to proceed *in forma pauperis*, *see* Application to Proceed in District Court Without Prepaying Fees or Costs, Dkt. 2, which this Court granted on March 20, 2025.  On April 29, 2025, the Court set a briefing schedule, and pursuant to that briefing schedule Defendant filed the Administrative Record on May 14, 2025.  *See generally* R.  After receiving two extensions, *see* Letter from Plaintiff to the Court (July 11, 2025), Dkt. 7; Order, dated July 14, 2025; Letter from Defendant to the Court (Nov. 17, 2025), Dkt. 9; Order, dated Nov. 19, 2025, Plaintiff filed a motion for judgment on the pleadings on September 15, 2025, *see generally* Pl.'s Mot., and Defendant filed a cross-motion for judgment on the pleadings on December 12, 2025, *see generally* Def.'s Mot. The parties filed their Joint Stipulation on January 13, 2026, *see generally* Joint Stip., and Plaintiff filed a reply the following day, *see generally* Pl.'s Reply.

**LEGAL STANDARDS**

**A.  Judicial Review**

A district court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g).

When assessing whether a decision was supported by substantial evidence, district courts do not review *de novo*.  *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").  Rather, they "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Courts are "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn," *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013), but "it is up to the agency, and not [district courts], to weigh the conflicting evidence," *Lebby v. Comm'r of Soc. Sec.*, 20-CV-4760 (PKC), 2022 WL 580983, at *7 (E.D.N.Y. Feb. 24, 2022) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  "Substantial evidence" is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Under this "very deferential standard of review," district courts can reject an ALJ's factual findings "only if a reasonable factfinder would *have to conclude otherwise.*"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

4

The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further development of the record is appropriate.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A court should grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) if, under the pleadings, "the moving party is entitled to judgment as a matter of law."  *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995).

**B.  Regulatory Framework for Determining DIB**

DIB is available to individuals who are disabled.  A person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

When determining whether an individual is disabled and therefore entitled to DIB, an ALJ employs a "five-step sequential evaluation process."  20 C.F.R. § 404.1520(a)(4).  At step one, an ALJ considers a claimant's work activity.  *Id.*  If a claimant is performing substantial gainful activity, then a claimant is not disabled, and the inquiry stops there.  *Id.*

If an ALJ does determine that a claimant is not performing substantial gainful activity, the ALJ proceeds to step two, where they determine whether a claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement.  *Id.* § 404.1520(a)(4)(ii).  If a claimant does not have

a severe impairment or combination of impairments that meets the durational requirement, then a claimant is not disabled, and the inquiry stops there. *Id.* § 404.1520(a)(4).

If an ALJ determines that a claimant does have a severe impairment or combination of impairments that meets the durational requirement, they proceed to step three, where the ALJ considers whether a claimant's medical impairment or combination of impairments appear on a list maintained by the Social Security Administration that defines impairments of sufficient severity as to prevent any gainful activity. *Id.* §§ 404.1520(a)(4), 404.1520(a)(4)(iii). If a claimant's impairment meets a definition on the list, then the ALJ will find a claimant disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* §§ 404.1520(a)(4)(iii)-(iv).

At step four, the ALJ evaluates a claimant's past relevant work and determines a claimant's RFC, which is defined as "the most [a claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1); *see id.* § 404.1520(a)(4)(iv). Work is past relevant work if a claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for a claimant to learn how to do it. *Id.* § 404.1560(b)(1). If a claimant's RFC permits them to perform past relevant work, they are not disabled, and the inquiry stops there. *Id.* §§ 404.1560(b)(3); 404.1520(a)(4).

If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of the claimant's RFC, age, education, and work experience, they can perform other substantial gainful employment. *Id.* § 404.1520(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five "the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform." *Nieves v. Comm'r of Soc. Sec.*, 20-CV-8873 (SLC), 2022 WL 951107, at *7 (S.D.N.Y. Mar. 30, 2022)

(citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).  A claimant who can perform such jobs is deemed not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff challenges the ALJ's evaluation of the medical opinion evidence and the subjective symptom testimony as unsupported by substantial evidence.  Pl.'s Mot. at 5-11.  The Court analyzes each in turn.

### A.  Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence.

Plaintiff argues that the ALJ "failed to properly evaluate" the medical opinion evidence, *id.* at 5, by declining to credit reviewing physician Dr. G. Feldman's ("Dr. Feldman") opinion that Plaintiff was "limit[ed] . . . to occasional reaching in any direction with the left arm (rather than merely overhead)."  R. at 25; *see* Pl.'s Mot. at 6-9.  He disputes the ALJ's weighing of the evidence and alleged failure to explain his rationale, arguing that Dr. Feldman's opinion "is supported by and consistent with [Plaintiff's] medical record."  Pl.'s Mot. at 7.  In opposition, Defendant argues that the ALJ "properly discounted Dr. Feldman's opinion" in reliance on "other assessments of record – those from [reviewing physician U. Ng, M.D. ('Dr. Ng') and internal medicine consultative examiner Chaim Shtock, D.O. ('Dr. Shtock')] – both of which agreed that Plaintiff was only limited in reaching overhead."  Def.'s Mot. at 7; *see id.* at 5-9.

The ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. For DIB claims filed on or after March 27, 2017, the applicable Social Security Administration regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ must "evaluate the persuasiveness," *id.*, of all medical opinions and prior administrative medical

findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the Social Security Administration's policies and evidentiary requirements, *id.* § 404.1520c(c)(1)-(5).  The "most important factors" are the first two: supportability and consistency.  *Id.* § 404.1520c(b)(2). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record.  *Id.* § 404.1520c(b).

Plaintiff states that, on April 27, 2022, he sustained a shoulder and back injury after slipping and falling while lifting a heavy object at work.  Joint Stip. at 2.  He reported the injury to his boss, who told him to take a few days off work, but he ultimately never returned because his pain worsened.  *Id.* at 4 (citing R. at 282-83).  Plaintiff proceeded to have the following medical visits:

- On June 22, 2022, Plaintiff met with Joseph Carbone, D.C. ("Dr. Carbone"), a chiropractor who found that Plaintiff experienced some symptoms of pain upon straight-leg raise testing and other tests for spinal dysfunction, a reduced range of lower back motion, reduced deep tendon reflexes, and 4/5 strength in his lower extremities.  *Id.* (citing R. at 284-85).  Dr. Carbone diagnosed Plaintiff with radiculopathy of the lumbar region (in other words, a pinched nerve) and dysfunction of the lumbar region.  R. at 285.  As treatment, Dr. Carbone recommended chiropractic manipulations and hot packs.  Joint Stip. at 4 (citing R. at 286).

- From the end of June 2022 to December 2022, Plaintiff continued to see Dr. Carbone about once or twice per week, during which time Dr. Carbone performed chiropractic adjustments but no physical examination.  *Id.* (citing R. at 288-328, 363-409, 412, 414-15, 417, 425-61, 479-552, 557-66).  At those visits, Plaintiff stated that his lumbar spine symptoms remained the same.  *Id.* at 4-5 (citing R. at 291, 293, 295, 297, 299, 301, 303, 305, 307, 309, 311-12, 315, 317, 319, 323, 325, 327, 524, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 551, 557, 559, 561, 563, 565).

- On October 10, 2022, Plaintiff underwent an MRI of his left shoulder, which "showed a low-grade partial-thickness tear of the subscapularis tendon (one of the rotator cuff tendons) and mild shoulder joint arthrosis [(in other words, osteoarthritis)]." *Id.* at 5 (citing R. at 475-76).

- On November 2, 2022, Plaintiff saw orthopedic surgeon Barry Katzman, M.D. ("Dr. Katzman"), for his left shoulder pain. *Id.* at 5. Dr. Katzman reviewed the MRI and examined Plaintiff, finding that Plaintiff "had a reduced range of left shoulder motion, specifically 90 out of 180 degrees of forward flexion, with tenderness and positive impingement signs." *Id.* (footnote omitted) (citing R. at 359). Dr. Katzman administered a steroid injection to Plaintiff's left shoulder. *Id.* (citing R. at 360).

- From January 2023 to February 2023, Plaintiff continued seeing Dr. Carbone for chiropractic adjustments about once or twice per week. *Id.* (citing R. at 567-92). At those visits, Plaintiff continued to report that his symptoms remained the same. *Id.* (citing R. at 567, 569, 571, 573, 575, 577, 579, 581, 583, 585, 587, 589, 591).

- On February 17, 2023, Plaintiff had a consultative internal medicine examination with Dr. Shtock. *Id.* Plaintiff told Dr. Shtock that he managed his symptoms with "Tylenol and ibuprofen, received one steroid injection, and attended physical therapy." *Id.* at 5-6 (citing R. at 420). After examining Plaintiff, Dr. Shtock noted that Plaintiff had no acute distress with a normal gait and stance and did not use an assistive device. *Id.* at 6 (citing R. at 421). Among other findings, Dr. Shtock observed that Plaintiff had 90 degrees of left shoulder forward elevation, 80 degrees of abduction, and full internal and external rotation. *Id.* (citing R. at 422). Plaintiff had "5/5 strength in the right arm, 4+/5 strength in the left arm, and 5/5 strength in the hands and legs." *Id.* (citing R. at 422). Importantly, Dr. Shtock opined that Plaintiff had "mild to moderate limitations with heavy lifting using the left upper extremity" and "moderate limitations performing overhead activities using [his] left arm." R. at 423.

- On February 27, 2023, state agency medical consultant Dr. Ng reviewed Plaintiff's available medical evidence and concluded, in pertinent part, that Plaintiff had "limited left" reaching overhead. R. at 56; *see* Joint Stip. at 7. Dr. Ng found Plaintiff was otherwise "unlimited" in "[r]eaching in front and/or laterally," as well as motor function and sensation. R. at 56.

- From March to May 2023, Plaintiff met with Dr. Carbone about one-to-three times per month. *See* Joint Stip. at 7 (citing R. at 587-99). Among other things, Dr. Carbone's examination of Plaintiff at that point in time "showed a moderately reduced range of lumbar spine motion with tenderness." *Id.* (citing R. at 587, 589, 591, 593, 595, 597). Plaintiff reported that his pain had stayed the same at these visits, *see* R. at 587, 589, 591, 593, 595, 597, and Dr. Carbone ultimately recommended Plaintiff seek treatment from another specialist, *see* Joint Stip. at 7 (citing R. at 594, 596, 598).

- On April 26, 2023, Plaintiff was examined by Frank Hudak, M.D. ("Dr. Hudak"), as part of an independent medical examination for a workers' compensation claim. *See* R. at 462-66. Dr. Hudak found, among other things, that "Plaintiff had a reduced range of left shoulder flexion, abduction, and rotation with 3/5 motor strength and positive impingement signs." Joint Stip. at 8 (citing R. at 464). Plaintiff also had "tenderness and a reduced range of lower back motion." *Id.* (citing R. at 464). After examination of Plaintiff and review of his medical records, however, Dr. Hudak concluded that Plaintiff "did not causally sustain" injuries to "his left shoulder or lumbosacral spine (low back) in a work

9

accident o[n] 4/27/2022" because there were an "absence of medical records to confirm [Plaintiff's] verbal history."  R. at 466.  He asserted "that no further orthopedic care, physical therapy, or further diagnostic testing [was] indicated."  *Id.*

- On June 14, 2023, state agency medical consultant Dr. Feldman reviewed "all the evidence in [Plaintiff's] file," noting that it contained no additional treatment notes from 2023.  R. at 63.  On the basis of this review, Dr. Feldman concluded that Plaintiff had "limited left" arm movement when reaching *both* "overhead" *and* "in front and/or laterally."  *Id.* at 62.  Overall, however, Dr. Feldman affirmed Dr. Ng's February 27, 2023, assessment.  R. at 63 ("I have reviewed all the evidence in the file and the prior assessment 2/27/23 is hereby affirmed.").

- On July 26, 2023, Plaintiff met with Dr. Carbone and reported that his lumbar pain had improved.  R. at 599 (noting that Plaintiff had reported "discomfort in the lumbar that ha[d] improved since the last visit").  Dr. Carbone observed "a moderately reduced range of lumbar spine motion."  Joint Stip. at 8 (citing R. at 599).

- On August 2, 2023, Plaintiff again saw Dr. Katzman because, although his November 2022 steroid injection to his left shoulder had "helped," his shoulder pain had since increased.  *See* R. at 469-70.  At that visit, Dr. Katzman observed "forward flexion to 90 degrees (normal is 180)" in Plaintiff's left shoulder and "tenderness over the rotator cuff."  R. at 469.  He diagnosed Plaintiff with "[l]eft shoulder partial rotator cuff tear" and "impingement syndrome" and discussed the possibility of Plaintiff undergoing "left shoulder arthroscopy."  R. at 470.

- On December 4, 2023, Plaintiff again met with Dr. Carbone.  *See id.* at 553-56.  Although Dr. Carbone observed that Plaintiff had a reduced range of lower back motion, Joint Stip. at 9 (citing R. at 554), he concluded that Plaintiff's lumbar region had been "improving and [was] showing improved function," *id.* at 555.

Having reviewed the Administrative Record, the Court finds that a reasonable factfinder could have agreed with the ALJ.  *Brault*, 683 F.3d at 448.  As stated above, the applicable regulations require an ALJ to articulate how persuasive they find a given medical opinion based on five factors, the most important being supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  *Id.* § 404.1520c(c)(1).  In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).  The regulation states that the Social Security Administration "will explain how [it] considered the supportability and consistency factors" and "may, but [is] not required to, explain how [it] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

In his decision, the ALJ walked through each medical opinion in detail when determining Plaintiff's RFC.  *See* R. at 21-26.  When he reached Dr. Feldman's opinion, the ALJ discussed both the supportability and consistency factors, finding that Dr. Feldman's opinion was

> mostly consistent with the record as a whole, including the opinions of Dr. Shtock and Dr. Ng.  However . . . Dr. Feldman's limiting [Plaintiff] to occasional reaching in any direction with the left arm (rather than merely overhead) [was] not supported by the record.  The evidence consistently shows his restricted range of motion and tenderness of the left shoulder.  There are some signs for slightly reduced motor strength at 4/5 and 4+/5, but no evidence for markedly reduced motor strength, diminished sensation, or atrophy.  [Plaintiff] is noted to be righthand dominant and the evidence generally shows normal handgrip strength and no evidence for any abnormalities related to dexterity.  The limitations for lifting, carrying, and overhead reaching fully consider the extent of the abnormal signs and MRI study.  There is no evidence, including [Plaintiff's] own reported activities of daily living, to support greater exertional limitations or additional manipulative limitations.

R. at 25.  As the Administrative Record reflects, the October 2022 MRI demonstrated that Plaintiff had a low-grade partial-thickness tear of his subscapularis tendon and mild shoulder arthrosis.  R. at 475-76.  The examining and reviewing physicians who assessed Plaintiff's left shoulder in the relevant 2022-23 time period accordingly noted that he had a reduced range of motion and tenderness.  *See* Joint Stip. at 5 (citing R. at 359); *id.* at 6 (citing R. at 422-23); *id.* at 7 (citing R. 56-57, 587, 589, 591, 593, 595, 597); *id.* at 8 (citing R. at 62-63, 464); *id.* at 9 (citing R. at 469-70).  However, as the ALJ found, Dr. Feldman diverged from other medical opinions in the record when he asserted that Plaintiff had limited movement when reaching "in front and/or laterally" in addition to just "overhead."  R. at 62.  Further, Dr. Feldman explicitly stated that he was affirming Dr. Ng's prior medical opinion, which only found overhead reaching limitations.  *Id.* at 63.  The

11

Court therefore cannot say that a reasonable factfinder would have *had* to credit Dr. Feldman's opinion on Plaintiff's front and/or lateral movement limitations. *See Brault*, 683 F.3d at 448; *see, e.g.*, *Villier ex rel. N.D.D.R. v. Comm'r of Soc. Sec.*, 23-893-cv, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) (upholding an ALJ's determination that part of a medical expert's opinion was unpersuasive where it was "not supported by [the doctor's] own notes, nor were they supported by the findings of [other doctors who had] reviewed the medical record").

Plaintiff's attempt to undermine this factual finding is unavailing. *See* Pl.'s Mot. at 5-9. As Defendant has asserted, Plaintiff is, in essence, disagreeing with the ALJ's weighing of the evidence. *See* Def.'s Mot. at 7; *see also* Pl.'s Mot. at 7 (arguing that "[i]t is not clear why the ALJ weighted the evidence" as he did). But disagreement is not tantamount to a finding that "no reasonable factfinder" could have concluded otherwise. *Brault*, 683 F.3d at 448; *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." (citing *Selian*, 708 F.3d at 417; *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)))).

The Court therefore upholds the ALJ's evaluation of the medical opinion evidence.

## B. Substantial Evidence Supports the ALJ's Evaluation of the Subjective Symptom Testimony.

Plaintiff next argues that the ALJ failed to establish a specific basis for dismissing his subjective symptom testimony. *See* Pl.'s Mot. at 9-11. In his view, the ALJ failed to consider the results of the October 2022 MRI and the results of his physical examinations, and he failed to discuss how Plaintiff's ability to perform some daily activities equated to being able to "engage in

12

full-time work at the light-exertional level." *Id.* at 11; *see id.* at 9-11.  In response, Defendant asserts that "substantial evidence supports the ALJ's very reasonable conclusion that the record as a whole did not support Plaintiff's claims of disabling physical limitation."  Def.'s Mot. at 11; *see id.* at 9-13.

The ALJ's evaluation of the subjective symptom evidence is supported by substantial evidence.  The applicable Social Security Administration regulations provide a two-step process for evaluating a claimant's asserted symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017).  At step one, the ALJ decides whether a claimant "suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)); *see also* SSR 16-3P, 2017 WL 5180304, at *3.  If so, the ALJ moves on to the second step and considers the "intensity and persistence of those symptoms to determine the extent to which those symptoms limit an individual's ability to perform work-related activities."  SSR 16-3P, 2017 WL 5180304, at *3; *see* 20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers "all of the available evidence from . . . medical  sources  and  nonmedical  sources,"  20  C.F.R.  § 404.1529(c)(1), including a plaintiff's "daily activities"; "location, duration, frequency, and intensity" of pain; "[p]recipitating and aggravating factors"; the "type, dosage, effectiveness, and side effects of any medication"; "[t]reatment, other than medication," that a plaintiff receives; "any" other "measures" a plaintiff uses to relieve pain, for example, "lying flat[,] . . . standing for 15 to 20 minutes every hour, sleeping  on  a  board,  etc."; and  "[o]ther  factors  concerning  [a  plaintiff's]  functional limitations and restrictions" due to pain or other symptoms," *id.* §§ 404.1529(c)(3)(i)-(vii).  In doing so, the ALJ must state "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and

13

any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10.

The ALJ met this standard. First, he concluded that step one was met, R. at 21-24, which Plaintiff does not contest, *see* Pl.'s Mot. at 9-11; Reply at 4-6. He then determined that step two was not met, R. at 24 ("[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent . . . with the objective medical evidence and the record as a whole."), which Plaintiff does contest, *see* Pl.'s Mot. at 9-11; Reply at 4-6.

In reaching this conclusion, the ALJ discussed the record in detail, engaging both with the evidence received from medical sources, *see* R. at 22-24, and the evidence received from Plaintiff himself, *see id.* at 22. The ALJ analyzed the §§ 404.1529(c)(3)(i)-(vii) factors, specifically observing, for example, that Plaintiff testified that he "spends most of his time managing his personal needs, attending physical therapy, and doing some cleaning at home." R. at 22. Plaintiff said he "can require some assistance with dressing, bathing, and caring for his hair" but does his "own laundry, cleaning, and shopping." *Id.* "Because of his pain," Plaintiff also testified that "he only goes out once per week and . . . needs someone to accompany him." *Id.* The ALJ additionally noted that Plaintiff said that his pain "causes limitations for lifting, bending, standing, reaching, walking, sitting, and using his hands" and that "[h]e aggravates his pain when he must stand up or sit down." *Id.* The ALJ discussed how Plaintiff reported that he treats his pain "with Ibuprofen 600mg and Tylenol 500mg" and that he "received pain injections, which helped improve his symptoms," as well as a "back brace . . . , which he uses daily." *Id.*

In assigning less weight to Plaintiff's subjective evidence, the ALJ explained, in depth, how Plaintiff had "very limited medical treatment since [Dr. Hudak's] finding in April 2023 that [Plaintiff] no longer required orthopedic or physical therapy treatment" and that the record showed

14

"only two presentations with treating orthopedist Dr. Katzman in November 2022 and August 2023." *Id.* at 24. The ALJ added that Plaintiff has otherwise had "some ongoing chiropractic care" and did not actually receive the surgery proposed by Dr. Katzman. *Id.* In sum, after examining both the medical and nonmedical evidence, the ALJ concluded that the record indicated "generally unremarkable signs consistent with an ability to perform light activity." *Id.*

Plaintiff characterizes these subjective-symptom findings as "boilerplate," Pl.'s Mot. at 9, but the Court's review of the Administrative Record indicates that they are not, *see* R. at 21-26. As shown above, the ALJ did, in fact, discuss Plaintiff's MRI, physical examinations, and ability to perform certain activities. *See* R. at 21-26. This case is therefore different from those in which courts have found an ALJ's decision inadequate. *Contrast Christina J. v. Comm'r of Soc. Sec.*, 695 F. Supp. 3d 357, 362-66 (W.D.N.Y. 2023) (concluding that the ALJ properly assessed the plaintiff's subjective symptom testimony)*, and David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 370-72 (W.D.N.Y. 2023) (same)*, with Joseph v. O'Malley*, 772 F. Supp. 3d 265, 276-77 (E.D.N.Y. 2024) (remanding for failing to properly analyze the plaintiff's subjective statements)*, and Brown v. Comm'r of Soc. Sec.*, 708 F. Supp. 3d 234, 250 (E.D.N.Y. 2023) (same).

Moreover, the ALJ may exercise discretion in assessing the evidence. *Genier*, 606 F.3d at 49 (While "the ALJ is required to take the claimant's reports of pain and other limitations into account," he "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing . . . the claimant's testimony in light of the other evidence in the record." (citations omitted)). He is not required to explicitly mention every reason relevant to his determination; rather, what matters is that the ALJ's decision permits the district court to understand his rationale. *See* SSR 16-3P, 2017 WL 5180304, at *10; *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("Because the ALJ thoroughly explained his credibility determination

15

and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand."); *Gauda v. Comm'r of Soc. Sec.*, 23-594, 2024 WL 886595, at \*2 (2d Cir. Mar. 1, 2024) ("Although the ALJ did not explicitly discuss [the plaintiff's] verbal or physical outbursts or address on an individualized basis the symptoms and triggers of her PTSD, we have explicitly recognized that '[a]n ALJ does not have to state on the record every reason justifying a decision' or 'discuss every piece of evidence submitted.'" (quoting *Brault*, 683 F.3d at 448)).  The ALJ did so here.

The Court therefore upholds the ALJ's evaluation of the subjective opinion evidence.

### CONCLUSION

For the aforementioned reasons, Plaintiff's Motion is denied, and Defendant's Motion is granted.  Accordingly, the ALJ's decision is affirmed.  The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

February 19, 2026
Brooklyn, New York

16